1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE AND CASUALTY
COMPANY,

                         Plaintiffs,

      v.

PETER J. HANSON, P.C. D/B/A HANSON
CHIROPRACTIC and PETER J. HANSON,

                     Defendants.

**No.**

**COMPLAINT**

**(JURY DEMAND)**

17

18

19

20

21

     Plaintiffs State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and State Farm Fire and Casualty Company ("State Farm Fire"), hereby bring this action for fraud, unjust enrichment, and for declaratory relief against Peter J. Hanson, P.C. d/b/a Hanson Chiropractic (hereinafter "Hanson Chiropractic") and Peter J. Hanson (hereinafter "Dr. Hanson") (hereinafter collectively "Defendants" or "Hanson") as more fully set forth below.

22

### I.    NATURE OF THE ACTION

23

24

     1.     This action seeks to recover money fraudulently and/or unjustly obtained from State Farm Mutual and State Farm Fire through the submission of bills and supporting

COMPLAINT – Page 1
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

documentation that were false, misleading, and/or fraudulent. Hanson submitted bills and supporting documentation to State Farm Mutual and State Farm Fire for examinations, testing, and treatment that Hanson allegedly provided to individuals who were involved in motor vehicle accidents and purportedly eligible for No-Fault Benefits under State Farm Mutual and State Farm Fire insurance policies. The bills and supporting documentation that Hanson submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire were misleading, false, and/or fraudulent because Hanson's services were not rendered, were not medically necessary, were not reasonable/related, were performed in violation of Washington law, and/or were not supported by the medical records.

2.     The bills and supporting documentation were the product of a fraudulent predetermined treatment plan (the "Predetermined Treatment Plan") administered to patients at Hanson Chiropractic. Hanson did not design the Predetermined Treatment Plan to appropriately examine, diagnose, and provide medically necessary services to benefit each individual patient. Instead, Hanson designed and carried out the Predetermined Treatment Plan to enrich Hanson by exploiting patients' No-Fault Benefits.

3.     The Predetermined Treatment Plan administered to patients at Hanson Chiropractic included, but was not limited, to: (a) failing to adequately examine patients to determine the true nature and extent of their injuries; (b) diagnosing patients with, among other things, non-specific pain/sprains/strains of the cervical, thoracic, and lumbar regions of the spine; (c) implementing a treatment plan that consisted of a combination of chiropractic manipulations, exercises, and therapy modalities regardless of the unique circumstances and needs of each patient; (d) subjecting many patients to unnecessary x-rays and repeat x-rays; (e) conducting re-evaluations of patients that were not used to modify the patient's course of treatment, but were simply done in furtherance of the Predetermined Treatment Plan; and (f)

COMPLAINT – Page 2
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

submitting documents to State Farm falsely representing that the examinations, diagnoses, and treatments purportedly rendered to the patients were medically necessary and compensable when, in fact, the treatments either were not rendered, were not medically necessary, were not reasonable/related, were performed in violation of Washington law, and/or were not supported by the medical records.

4.      As a result of the Predetermined Treatment Plan: (a) patients were not examined, diagnosed, and appropriately treated for conditions which they may have had; (b) patients were subjected to unnecessary and sometimes excessive medical treatments; and (c) patients' limited No-Fault Benefits were substantially reduced and therefore not available for appropriate treatment that they may have needed.

5.      As a result of Hanson's scheme, State Farm Mutual and State Farm Fire have collectively incurred damages of more than $300,000.00.

## II.      JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7.      In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367 and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to State Farm Mutual's and State Farm Fire's claims occurred in this judicial district and the Defendants reside and/or do business in this judicial district.

COMPLAINT – Page 3
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

### III.    PARTIES

**A.    Plaintiffs**

9.    Plaintiff State Farm Mutual is an Illinois domestic property and casualty insurer incorporated under the laws of Illinois, with its principal place of business in Bloomington, Illinois.  State Farm Mutual is licensed to engage in business in the State of Washington as a foreign corporation and is doing business in King County and Snohomish County, Washington. State Farm Mutual issues automobile insurance policies in Washington and made substantial insurance payments to, or for the benefit of, Hanson.

10.    Plaintiff State Farm Fire is an Illinois corporation with its principal place of business in Bloomington, Illinois. State Farm Fire is licensed to engage in business in the State of Washington as a foreign corporation and is doing business in King County and Snohomish County, Washington. State Farm Fire issues automobile insurance policies in Washington and made substantial insurance payments to, or for the benefit of, Hanson.

**B.    Defendants**

11.    Peter J. Hanson, P.C. d/b/a Hanson Chiropractic is an active Washington corporation with its principal place of business located at 11314 4th Avenue W., Suite 103, Everett, Washington 98204. Dr. Hanson started Hanson Chiropractic in 1995 when he purchased a chiropractic practice from a retiring chiropractor in Everett. Dr. Hanson remains the sole owner of Hanson Chiropractic. Hanson Chiropractic is believed to employ four chiropractors (including Dr. Hanson) and six massage therapists.

12.    Peter J. Hanson, D.C. is a resident of Snohomish County, Washington and is a licensed chiropractor who is the owner of Hanson Chiropractic. Dr. Hanson began practicing in Washington in 1995.

COMPLAINT – Page 4
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## IV.    ALLEGATIONS COMMON TO ALL COUNTS

**A.    Claim Payments Under No-Fault/PIP**

13.    State Farm Mutual and State Farm Fire issue automobile insurance in the State of Washington.

14.    Under Washington's Personal Injury Protection statute, insurance companies are required to offer No-Fault Benefits to their insureds; however, insureds are not required to purchase the coverage. *See* Wash. Rev. Code § 48.22.085 (2015).

15.    Washington's No-Fault laws ensure that injured victims of motor vehicle accidents have an efficient mechanism to receive and pay for the medically necessary healthcare services that they require.

16.    When an insured elects to purchase coverage and later use the benefits, the insurance company "may deny, limit, or terminate benefits if the insurer determines that the medical and hospital services: (a) Are <u>not reasonable</u>; (b) Are <u>not necessary</u>; (c) Are <u>not related to the incident</u>; or (d) Are not incurred within three years of the automobile accident." *See* Wash. Admin. Code § 284-30-395(1) (2015) (emphasis added).

17.    In Washington, it is a crime for any person to submit a claim for insurance or statement of claim containing knowingly false information. The Washington Revised Code § 48.80.030 provides in pertinent part that:

> (1) <u>A person shall not make or present or cause to be made or presented to a health care payer a claim for a health care payment knowing the claim to be false</u>.

> (2) No person shall <u>knowingly present to a health care payer a claim for a health care payment that falsely represents that the goods or services were medically necessary</u> in accordance with professionally accepted standards. Each claim that violates this subsection shall constitute a separate offense.

COMPLAINT – Page 5
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

(3) <u>No person shall knowingly make a false statement or false representation of a material fact to a health care payer</u> for use in determining rights to a health care payment. Each claim that violates this subsection shall constitute a separate violation . . .

Wash. Rev. Code § 48.80.030 (2015) (emphasis added).

18.    Similarly, Washington Revised Code § 48.30.230 provides in pertinent part that: "It is unlawful for any person, knowing it to be such, to: (a) <u>Present, or cause to be presented, a false or fraudulent claim, or any proof in support of such a claim,</u> for the payment of a loss under a contract of insurance." Wash. Rev. Code § 48.30.230 (2015) (emphasis added).

**B.    Standards for Chiropractic Patient Care**

19.    The Washington Administrative Code mandates that "[t]he health and welfare of the patient shall always be paramount." *See* Wash. Admin. Code § 246-808-360 (2015).

20.    Because of this, "[t]he chiropractor shall neither intentionally exaggerate nor minimize the gravity of the patient's condition" (*see* Wash. Admin. Code § 246-808-370 (2015)) and "[a] chiropractor shall not prescribe nor perform any services which are <u>not reasonably necessary</u> in consideration of the patient's condition. *See* Wash. Admin. Code § 246-808-400(3) (2015) (emphasis added).

**C.    Standard of Care for Patients with Non-Specific Neck/Back Injuries**

21.    Hanson purported to examine, diagnose, and treat patients who were in motor vehicle accidents and complained of neck and/or back pain.

22.    For patients with complaints of neck and back pain, a detailed history and examination must be performed to arrive at an appropriate diagnosis and treatment plan.

23.    Based upon an appropriate diagnosis, a licensed professional must engage in individualized medical decision-making to design a treatment plan that is tailored to the unique circumstances of each patient.

COMPLAINT – Page 6
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

24.     Appropriate treatment plans for patients with non-specific neck and back pain may involve a variety of interventions including but not limited to passive treatment modalities and active treatment modalities.

25.     Passive treatment modalities do not require any affirmative effort or movement by patients. There are many kinds of passive modalities including chiropractic manipulation, manual therapy, massage, traction, acupuncture, heat, and laser. Active treatment modalities require patients to affirmatively participate in their treatment, and include many different kinds of stretching, exercising, and strengthening exercises.

26.     In appropriate treatment plans, a combination of passive and active modality treatments are often necessary to reduce a patient's pain and restore function. Passive modalities are often used to facilitate active patient participation/active modalities. Most medical rehabilitation guidelines emphasize that active modalities are vitally important and result in better outcomes for patients with spine conditions.

27.     While one or more passive modalities may be appropriate on any particular visit to reduce pain and facilitate the patient's ability to perform active modalities, the same combination of passive modalities—chiropractic manipulation, manual therapy, massage, and traction—for almost every patient regardless of whether the patient has improved would be inappropriate and would not meet the standard of care.

28.     The decision of which, if any, types of treatment are appropriate for each patient, as well as the level, frequency, and duration of the various treatments, should vary depending on the unique circumstances of each patient, including: (a) the patient's age, social, family, and medical history; (b) the patient's physical condition, limitations, and abilities; (c) the location, nature, and severity of the patient's injury and symptoms; and (d) the patient's response to treatment.

COMPLAINT – Page 7
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

29.     During the course of treatment, treatment plans should be periodically reassessed and modified based upon the unique circumstances of each patient and their response (or lack thereof) to treatment. Outside diagnostics, medical consultations, or second opinion consultations are warranted for patients who are not improving or who have signs, symptoms, or clinical findings of neurological conditions or diagnosis outside the scope of the licensed professional's practice.

30.     Patients should be discharged from treatment when they have reached maximum medical improvement, which means that further treatment is unlikely to benefit the patient.

31.     The above-described process of examination, diagnosis, and treatment must be properly documented for the benefit of: (a) the licensed professionals involved in the patient's care; (b) other licensed professionals who may treat the patient contemporaneously or subsequently; (c) the patients themselves whose care and condition necessarily depends on the documentation of this information; and (d) payors, such as State Farm Mutual and State Farm Fire, so that they can determine whether the treatments are reasonable, necessary, and related to the automobile accident such that they have a duty to pay for the medical care.

32.     As described below, patients at Hanson Chiropractic were not appropriately examined, diagnosed, or treated by Hanson. Rather, patients were treated pursuant to the Predetermined Treatment Plan that did not take into account the patients' individualized needs.

COMPLAINT – Page 8
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## V.     THE PREDETERMINED TREATMENT PLAN  AT HANSON

33.     Between 2009 and 2015, Hanson treated approximately 170 State Farm Mutual or State Farm Fire insureds with PIP Coverage following motor vehicle accidents.[1] Of the 170 individual claims, there were 139 claims for patients aged 18 and over. Of those 139 claims, State Farm Mutual or State Farm Fire received full reports from Hanson on 138 of the claims.

34.     Hanson treated the 138 adult State Farm Mutual and State Farm Fire insureds pursuant to the Predetermined Treatment Plan described below. *See* Predetermined Treatment Plan Summary Chart, a copy of which is attached as **Exhibit A**.

### A.     The Initial Evaluation for Adult Patients

35.     Patients received an initial examination wherein Hanson identified that more than 90% of the patients had "fixation, spasm, tenderness and inflammation" at six spinal levels (e.g., C1, C6, T4, T9, L1 and sacrum).

36.     Hanson diagnosed 100% of patients with pain/injuries in at least three out of the five spinal regions (Cervical, Thoracic, Lumbar, Sacral, or Pelvic).

37.     Of those five spinal regions, Hanson diagnosed approximately 99% of the patients with a cervical injury, 99% of the patients with a thoracic injury, and 99% of patients with a lumbar injury.

38.     Hanson diagnosed approximately 92% of the patients with needing ongoing chiropractic treatment at exactly six spinal regions of concern (e.g., C1, C4, T2, T12, L2, L5).

---

[1] The "170 insureds" represents 170 individual instances where a patient was treated for a motor vehicle accident related injury. If an insured had two separate accidents with two separate treatments, the insured is counted twice.

COMPLAINT – Page 9
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

39.     Hanson routinely ordered x-rays as an initial diagnostic tool—with more than 96% of patients receiving an initial set of x-rays. The treatment plans after these initial x-rays remained templated and did not reflect any decision-making based on the x-ray findings.

40.     After completing the initial evaluation, Hanson's treatment plan recommended that approximately 96% of patients receive the exact same three treatment modalities: (1) gentle facet manipulation; (2) strengthening exercises; and (3) traction.

41.     Hanson's initial examinations led to: (1) generic diagnoses of patients with conditions that varied little from patient to patient; (2) unnecessary x-rays and exposure to undue radiation; and (3) the recommendation that the same Predetermined Treatment Plan was appropriate for each patient regardless of the patient's age, physical condition, type of motor vehicle accident, location of impact, or other individual factors.

**B.      Ongoing Treatment for Adult Patients**

42.     As part of the Predetermined Treatment Plan, Hanson recommended (and provided) excessive patient visits and treatment, such as medically unnecessary chiropractic adjustments and traction.

43.     Hanson systematically recommended that approximately 93% of patients treat at Hanson three times per week for at least five weeks—despite the differences in the severity of the accident, the patients' complaints, and the patients' limitations.

44.     During these treatment visits, Hanson performed non-medically necessary chiropractic adjustments. Specifically, for approximately 91% of patients Hanson performed chiropractic manipulation on exactly six spinal segments (e.g., C1, C6, T4, T9, L1 and sacrum) at every single visit for the entire course of the patient's treatment without any modification to the specific spinal segments or treatment plan in response to the patient's improvements (or lack thereof).

COMPLAINT – Page 10
Cause No. _____

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

45.     While treating the exact same spinal segments at every single treatment could be possible for a single patient, it is highly unlikely that the vast majority of Hanson patients would require chiropractic manipulative treatment at the same spinal levels during the entirety of their treatment. In a typical legitimate treatment plan, the chiropractor would diagnose the patient, perform treatment on the problem areas, re-evaluate the patient to determine the patient's improvements (or lack thereof), and then alter the course of treatment (i.e., alter the location of chiropractic manipulations or the number of locations being adjusted).

46.     In addition to chiropractic manipulation, patients regularly received in-office traction. Despite this treatment, Dr. Hanson prescribed and billed more than 71% of State Farm Mutual or State Farm Fire insureds for a "home traction device."

47.     After a period of time, Hanson re-evaluated patients without attention to patient outcomes during treatment. Improvements or lack of improvements in symptoms were not adequately addressed in the re-evaluations.  Hanson's "re-evaluations" of patients were merely a pre-text to continue the Predetermined Treatment Plan—which remained unchanged regardless of the patients' progress. The only change in the treatment plan was almost always limited to a decrease in treatment frequency rather than an individualized treatment plan based on the results of the re-evaluation.

48.     For example, after undergoing treatment approximately three times per week for 11 weeks, patient T.B. was re-evaluated and tested on March 24, 2015. The treating Hanson chiropractor (Dr. Woodbury) recommended that T.B. only continue receiving treatment on an "as-needed" basis. Two days later, on March 26, 2015, T.B. was seen by a different chiropractor at Hanson Chiropractic (Dr. Hanson) who reverted back to the Predetermined Treatment Plan and prescribed T.B. treatment for three times per week for an additional two weeks—without any documented change in the patient's symptoms or

COMPLAINT – Page 11
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

examination.  In fact, Dr. Hanson's "Objective Segmental Joint Palpitation" was identical to Dr. Woodbury's assessment two days prior.  Dr. Hanson also recommended the patient have additional x-rays in two weeks.  The very next day (March 27, 2015), T.B. was again treated by Dr. Woodbury who noted that treatment should continue for three times per week for two weeks. On April 1, 2015, additional x-rays were taken. T.B. continued receiving the same treatment following the x-rays. The re-evaluation, range of motion testing, strength testing, and x-rays were not used to change the patient's course of treatment, but were simply part of the Predetermined Treatment Plan. Hanson submitted bills for T.B.'s treatment to State Farm Fire. *See* Redacted Copies of T.B.'s Medical Records, copies of which are attached as **Exhibit B**.

49.    While the specific combination of treatments, diagnostic testing, and recommendations by Hanson could possibly be justified in any one patient, such uniformity of treatment is not credible across all patients of differing ages, physical conditions, injuries, and types of accidents.

50.    Hanson's generalized treatment resulted in the overuse of chiropractic manipulative treatment and traction therapy because patients were uniformly provided treatment that was not based on their individual injuries, complaints, and improvements (or lack thereof).

51.    To conceal its fraudulent conduct from State Farm Mutual and State Farm Fire, Hanson prepared and submitted medical records designed to make it appear Hanson was providing individualized medical care to each patient.

## VI.    HANSON'S IMPROPER USE OF X-RAYS

52.    Hanson routinely ordered and took x-rays and repeat x-rays that were not medically necessary.  Further, despite the patient population having diverse x-ray findings, the

COMPLAINT – Page 12
Cause No. _____

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    results of the x-rays did not impact the patients' course of treatment. The change in treatment

2    plan (if any) was almost always limited to a standard decrease in treatment frequency rather

3    than an amended and individualized treatment plan based on the x-ray findings.

4           **A.     Hanson's Overuse of X-rays**

5           53.     Although x-rays can be an effective diagnostic tool, the routine and improper

6    use of x-rays subjects patients to unnecessary radiation exposure and falls outside the

7    chiropractic standard of care.

8           54.     The American Chiropractic Association guidelines state that a chiropractor

9    should not subject a patient to x-rays unless there is a "[m]edical necessity for the radiation

10   exposure to the patient." Furthermore, "there should always be clinical evidence of need for

11   diagnostic x-ray examinations before such are performed. Use of x-ray as a routine procedure

12   and from patients' self-referral is not good practice and is not condoned." *See* American

13   Chiropractic       Association       Policy       on       X-Ray,       *available       at*

14   http://www.acatoday.org/About/Public-Policies (last visited June 13, 2016) (emphasis added),

15   attached as **Exhibit C**.

16          55.     Where repeat x-rays are required, the medical records must support subjective

17   complaints by the patient and objective findings to justify the additional testing and radiation.

18   *See* Wash. Admin. Code § 246-808-565 (2015) (stating that "[t]he following requirements for

19   chiropractic X-ray have been established because of concerns about over radiation and

20   unnecessary X-ray exposure . . . (5) The subjective complaints, if any, and the objective

21   findings substantiating the repeat radiographic study must be documented in the patient

22   record.").

23          56.     Hanson routinely took initial x-rays of patients whether or not there was a

24   medical necessity for the x-rays. For example, approximately 14 patients received x-rays from

COMPLAINT – Page 13
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

a hospital or other medical provider <u>before arriving at Hanson</u>. Notwithstanding, Hanson ordered x-rays on the same body regions as part of Hanson's Predetermined Treatment Plan. There is no indication in the patient chart notes that Hanson reviewed the prior imaging to determine whether Hanson needed additional views for some medical reason. *See* Duplicate X-Ray Summary Chart, a copy of which is attached as **Exhibit D**.

57.    Over 96% of patients were ordered by Hanson to obtain a set of x-rays—showing Hanson's routine and systematic use of x-rays as a diagnostic tool.

58.    Additionally, Hanson often ordered a second set of x-rays of patients without any indication as to why or how such x-rays were medically necessary. In most cases where Hanson ordered a second set of x-ray images, the patient's medical records documented <u>reduced</u> pain scores and objective <u>improvements</u> such as "an increase in range of motion" and "decreased fixation in the segmental levels." In instances where the patient's medical records reported subjective and objective <u>improvements</u>, repeat x-rays would fall outside the standard of care.

59.    The overuse of x-rays was most egregious with younger patients and patients of childbearing age because such patients are more vulnerable to radiation and should not be subjected to excess radiation without concrete medical justification.

60.    Notwithstanding, Hanson performed x-rays on at least 22 minor patients. Of those minors, at least six minors received a second set of x-rays, at least two minors received a third set of x-rays, and at least one minor received a fourth set of x-rays according to Hanson's billing records. *See* Minor X-Ray Summary Chart, a copy of which is attached as **Exhibit E**.

61.    For example, minor patient A.D. was 12 years old on the date of loss. She was initially treated on July 25, 2012 at The Everett Clinic. The Everett Clinic did not take or

COMPLAINT – Page 14
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

recommend x-rays based on A.D.'s injuries. On August 2, 2012, A.D. treated at Hanson wherein Hanson took multiple initial x-rays. The very next day, Hanson's records indicate Hanson took a <u>second</u> set of multiple x-rays. Approximately seven weeks later, on September 25, 2012, A.D. reported <u>decreased pain</u> in her neck, yet Hanson took a <u>third</u> set of x-rays. Finally, on December 17, 2015, A.D. reported <u>minimal pain</u> in her neck and low back, and <u>no pain</u> in her mid-back, ankle, knee, or head. Notwithstanding A.D.'s continued improvements, Hanson took a <u>fourth</u> set of multiple x-rays. Based on A.D.'s continued improvements, there was no medical reason to subject a 12 year old to four sets of x-rays in a six month period. *See* Redacted Copies of A.D.'s Medical Records, copies of which are attached as **Exhibit F**.

62.    Additionally, patient A.C. was 17 when she began treating with Hanson. A.C.'s file did not contain any indication of parental consent or any indication that the x-rays were medically necessary. A.C. received at least seven x-rays on her initial visit with Hanson (four x-rays of her neck, one x-ray of her mid-back, and two x-rays of her low back) with an effective radiation dose of approximately 4.21 mSv—which is the equivalent to approximately 70 chest x-rays—despite there being no clear medical necessity. There was no mention of how the x-ray results were used to guide treatment. *See* Redacted Copies of A.C.'s Medical Records, copies of which are attached as **Exhibit G**.

63.    Hanson's overuse of x-rays, repeat x-rays, and x-rays on minors—without any medical indication that such x-rays were necessary—was improper, subjected patients to unnecessary and/or excessive radiation, unjustifiably drove up the cost of treatment, and prematurely exhausted the patient's No-Fault Benefits.

**B.    Hanson Improperly Used Lateral Bending X-Rays on Patients**

64.    Traditional x-rays take films of a patient in a static or non-moving position.

COMPLAINT – Page 15
Cause No. _____

**CORR CRONIN MICHELSON BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

65.     Lateral bending x-rays take films of a patient from the side (lateral view) while

2

the patient bends forward and backward as far as possible. The images obtained via lateral

3

bending x-rays are used to check for instability in the spine.

4

66.     The American Chiropractic Association has strict guidelines on the use of

5

lateral bending x-rays (also known as "flexion and extension" x-rays):

6

**Lateral Bending Views of the Spine**

7

A trend in plain film radiography has been identified wherein multiple lateral bending views of the spine and its components have been performed. The American Chiropractic College of Radiology considers these procedures to be efficacious in only a limited number of circumstances. Certain guidelines of utilization are deemed necessary to safeguard the patient population from unnecessary ionizing radiation . . . . The American Chiropractic College of Radiology considers the utilization of lateral bending views of the spine be a <u>procedure only to be utilized in limited circumstances</u> and adopts the following guidelines to their production:

8

9

10

11

12

- Are reserved additional views, <u>not considered as part of the initial radiographic examination</u>, <u>unless specific trauma or biomechanical dysfunction</u> is documented by history or clinical evaluation, which suggest findings unobtainable by other means.

13

14

15

- Are performed initially <u>only in those patients where prior treatment has been unsuccessful</u> or where objective clinical findings or treatment resistive symptom expression suggests an as yet undiscovered occult pathology.
  . . .

16

17

18

- <u>Repeat utilization is rarely indicated</u> save in those cases where appropriate response to treatment is lacking or where re-injury or exacerbation has been clinically documented.

19

20

*See* American Chiropractic Association Policy on X-Ray, *available at*

21

http://www.acatoday.org/About/Public-Policies (last visited June 13, 2016)    (**Exh. C**)

22

(emphasis added).

23

24

COMPLAINT – Page 16
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

67.    Hanson orders lateral bending images without regard to whether the particular patient has "specific trauma or biomechanical dysfunction" documented in his/her "history or clinical evaluation" or whether the patient's "prior treatment has been unsuccessful."

68.    Despite the American Chiropractic Association's position that "[r]epeat utilization is rarely indicated," Hanson frequently takes a repeat set of lateral bending films without regard to whether the patient is responding to treatment and without regard to whether the patient's injuries have worsened or improved.

69.    Hanson's use of "lateral bending" x-rays and repeat "lateral bending" x-rays on its patients is improper and falls outside the standard of care.

## VII.    HANSON'S TEMPLATED CHART NOTES DO NOT SUPPORT THE BILLED SERVICES

70.    Despite Washington's patient record-keeping requirements, Hanson's patient charts are often vague, contradictory, do not contain adequate patient histories, and do not support the treatment billed to State Farm Mutual and State Farm Fire. Additionally, the chart notes reflect that Hanson has treated patients for unrelated injuries, yet fraudulently billed State Farm Mutual and State Farm Fire under the auspice that the treatments were "related." Hanson's conduct violates the standard of care for chiropractic record keeping and evidences that Hanson was not properly evaluating, diagnosing, and treating patients in accordance with an individualized treatment plan.

A.    Standards for Chiropractic Billing and Record Keeping

71.    Section 246-808-540 of the Washington Administrative Code explains that "[a] doctor of chiropractic . . . shall utilize codes and/or descriptions of services that accurately describe the professional services rendered." Wash. Admin. Code § 246-808-540 (2015).

COMPLAINT – Page 17
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

72.     The patient's medical records/chart notes must support the treatment billed. *See* Wash. Admin. Code § 246-808-560(4) (2015). Specifically, "[a] doctor of chiropractic must keep complete and accurate documentation on all patients and patient encounters" and such "[d]ocumentation must sufficiently record all the services provided, as well as any changes in the patient's presentation or condition." *See* Wash. Admin. Code § 246-808-560(4) (2015) (emphasis added). This includes "[t]he region(s) of all treatment and, if applicable, the specific level(s) of chiropractic adjustments must be recorded in the patient encounter documentation." *See* Wash. Admin. Code § 246-808-560(4) (2015) (emphasis added).

73.     As part of proper record keeping, "[a]ny chiropractor who treats patients in the state of Washington shall maintain all treatment records regarding patients treated. These records may include, but shall not be limited to, X rays, treatment plans, patient charts, patient histories, correspondence, financial data, and billing." Wash. Admin. Code § 246-808-650(1) (2015) (emphasis added).

74.     Washington's patient care and record keeping laws are one protection against unscrupulous doctors who fraudulently bill patients and insurance companies.

**B.     Hanson's Medical Records Fail to Meet the Basic Billing and Recordkeeping Requirements**

75.     Hanson's templated and vague medical records fail to meet the basic standards for chiropractic recordkeeping for several reasons.

76.     First, Hanson's chart notes are vague, sometimes contradictory, and often do not support the treatment billed. For example, on September 15, 2014, Hanson indicated in its chart notes that patient A.S. had "headaches: 6/10" pain. The same chart notes go on to state that the patient reported: "I don't have a headache today." This appears to be a contradiction

COMPLAINT – Page 18
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

within the same chart note. *See* Redacted Copies of A.S.'s Medical Records, copies of which are attached as **Exhibit H**. Additionally, patient J.G. provided a recorded statement wherein he explained that he never gave Hanson a pain scale rating, yet the pain scale rating appears throughout J.G.'s medical records. *See* Redacted Copies of J.G.'s Medical Records, copies of which are attached as **Exhibit I**.

77.    Hanson's chart notes also do not support the charges billed. For example, on November 12, 2012, Hanson billed for massage therapy (CPT Code 97124) for patient A.C., yet A.C.'s chart notes do not include any indication that massage was performed, such as the duration and location of the treatment. *See* Redacted Copies of A.C.'s Medical Records, copies of which are attached as **Exhibit J**.

78.    Hanson's chart notes contain scores of additional examples of vague and unsupported services—evidencing that Hanson was either billing for services not rendered, was not maintaining patient records in accordance with Washington law, and/or was fraudulently billing State Farm Mutual and State Farm Fire.

79.    Second, in some of the patient records reviewed, the patient history recorded in the chart notes did not adequately document the patient's physical condition and was insufficient to support the services billed. The histories did not include basic information relating to the patient's past medical issues (e.g., osteoarthritis, inflammatory arthritis, etc.) or current medical conditions (e.g., whether the patient was pregnant). Without this basic information, Hanson would be unable to create an individualized treatment plan. A patient who has severe osteoarthritis/inflammatory arthritis or one who is pregnant would certainly require a different course of treatment than a healthy young athlete. Hanson's failure to take into account or document each patient's medical history further evidences that Hanson was treating patients based on a Predetermined Treatment Plan and not based on the patient's

COMPLAINT – Page 19
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

specific conditions, injuries, and individualized medical needs. Additionally, without a detailed history, Hanson could not properly bill an evaluation and management CPT code because one of the requirements of an evaluation and management code is that the physician evaluates the patient's medical history.

80.    Third, Hanson's chart notes reflect that Hanson improperly treated at least some of its patents for injuries <u>unrelated</u> to the patient's motor vehicle accident, yet billed State Farm Mutual or State Farm Fire for these treatments under the auspice that the injuries were <u>related</u> to the accident in order to unlawfully qualify for payments from the patient's No-Fault benefits. Pursuant to Washington Administrative Code § 284-30-395, an insurance company is only required to provide No-Fault coverage for medical services that are "related to the incident." Notwithstanding this requirement, in at least a handful of known cases Hanson billed State Farm Mutual or State Farm Fire for unrelated injuries.

81.    For example, patient J.C. presented at Hanson with "neck pain, upper back pain, radiating pain into the right shoulder/trap area and to the shoulder blades, mid back pain and headaches." Patient J.C. reported some low back pain, but made clear to Hanson that her low back pain was "due to a pre-existing lumbar fusion at L5-S1" and that she had "[n]o change in her lower back symptoms since the accident." Notwithstanding the admittedly <u>unrelated nature of J.C.'s low back pain</u>, Hanson's initial evaluation diagnosed J.C. with, among other things, "lumbalgia" (or low back pain) which Hanson claimed was "directly related to a MOTOR VEHICLE COLLISION." Hanson then ordered x-rays of and performed chiropractic manipulations to J.C.'s low back during the course of her treatment. Hanson billed these unrelated treatments under J.C.'s No Fault Benefits and State Farm Mutual paid for same. *See* Redacted Copies of J.C.'s Medical Records, copies of which are attached as **Exhibit K**.

COMPLAINT – Page 20
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

82.     Fourth, there were several instances wherein the medical records mixed-up patient names. The name mix-ups continued from chart note to chart note for several months evidencing that the chiropractors at Hanson were not creating individualized treatment plans and chart notes for each patient on each visit, but instead were using the same templated chart notes with the same Predetermined Treatment Plan for each patient.

83.     Each of the above instances of incomplete, vague, or inaccurate chart notes viewed in an isolated claim file may appear to be a simple mistake or oversight. It is only when the claims are considered in the aggregate did a pattern emerge that Hanson was either routinely and fraudulently charging for services that were not rendered and/or were not medically necessary, or that Hanson was improperly billing/charting patient visits and treatments in violation of Washington law.

## VIII.   HANSON IMPROPERLY CHARGES PATIENTS WITH NO-FAULT INSURANCE MORE THAN NON-INSURANCE PATIENTS

84.     Because patient care is of the utmost importance, a chiropractor may not charge patients more or less simply because the patient has insurance. Under Washington law, a chiropractor is prohibited from "[s]ubmitting to any third-party payor a claim for service of treatment at a greater or an inflated fee or charge than the usual fee the licensee charges for that service or treatment when rendered without third-party reimbursement." Wash. Admin. Code § 246-808-545(2) (2015) (providing that charging a third-party payor a higher price than the usual fee charged is grounds for disciplinary action).

85.     Additionally, the Washington Administrative Code provides that "[w]hen a chiropractic service is represented in public advertising as available without cost, or at a reduced cost, that service must be made available to everyone who wishes to take advantage of the offer on an equal basis. No charge may be made to any individual or third-party health

COMPLAINT – Page 21
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   care payor for any services which have been provided on a free basis." Wash. Admin. Code §

2   246-808-630(2) (2015) (emphasis added).

3       86.    Notwithstanding this prohibition, Hanson bills at least some No-Fault

4   insurance patients significantly more than what he charges private pay patients (or patients

5   with no insurance benefits) for the same services.

6       87.    Additionally, Hanson Chiropractic's website offers non-automobile insurance

7   patients a free consultation and free one hour massage on their first visit, but requires

8   automobile-accident patients to pay for these same services (via their No-Fault insurance).

9   Hanson's practice of charging No-Fault insurance patients, but providing the same services

10  for free to non-automobile insurance patients is unlawful and renders Hanson's bills to State

11  Farm for such services unreasonable, false, misleading, and/or fraudulent.

## IX.    HANSON SUBMITTED FALSE, MISLEADING, AND/OR FRAUDULENT BILLS TO STATE FARM MUTUAL AND STATE FARM FIRE

14      88.    Hanson submitted bills and supporting documentation for chiropractic

15  treatment and/or massages for patient visits.

16      89.    By submitting the bills and supporting documentation, Hanson represented that

17  it actually provided the services reflected therein and that the services were reasonable,

18  related, and medically necessary. However, the bills and supporting documentation were

19  false, misleading, and/or fraudulent because they did not reflect appropriate examinations,

20  diagnoses or treatments that were reasonable or medically necessary. Instead, the services

21  were part of Hanson's standard Predetermined Treatment Plan aimed at providing the same

22  combination of treatments to patients on almost every visit, regardless of the patient's

23  documented progress or lack thereof—all in an effort to maximize the financial benefit to

24  Hanson.

COMPLAINT – Page 22
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

90.     State Farm Mutual and State Farm Fire have retained the undersigned firms as their legal counsel in this matter and are obligated to pay the undersigned firms' costs and reasonable attorneys' fees.

91.     All conditions precedent to the filing of this Complaint have been satisfied, excused, or waived.

## X.     CAUSES OF ACTION

### Count I: Common Law Fraud

### (All Defendants)

92.     State Farm Mutual and State Farm Fire incorporate, adopt and re-allege as though fully set forth herein, each and every allegation in Paragraphs 1 through 91 above.

93.     Defendants Hanson Chiropractic and Dr. Hanson intentionally and knowingly made false, misleading, and/or fraudulent statements of material fact to State Farm Mutual and State Farm Fire by submitting, or causing to be submitted, medical reports, records, billings and supporting documentation that falsely represented that the services provided were reasonable and medically necessary and based on an individualized treatment plan when Hanson knew this was not true.

94.     Defendants Hanson Chiropractic and Dr. Hanson knew or recklessly disregarded the truth that Hanson was not providing individualized, patient-centered care, but instead was employing a Predetermined Treatment Plan for the purpose of maximizing payments to Hanson.

95.     Defendants Hanson Chiropractic and Dr. Hanson's false and misleading statements of material fact include the representations in each and every claim identified in the chart attached hereto as **Exhibit A** that the services performed by Hanson were medically necessary, were reasonable and related, and were reimbursable when, in fact, the services

COMPLAINT – Page 23
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

either were not rendered, were not medically necessary, were not reimbursable, and/or were not reasonable or related.

96.     Hanson knew that the above-described misrepresentations were false, misleading, and fraudulent when they were made or, at a minimum, had a reckless disregard for their truth.

97.     Defendants Hanson Chiropractic and Dr. Hanson knew and intended for State Farm Mutual and State Farm Fire to rely on these misrepresentations.

98.     Defendants Hanson Chiropractic and Dr. Hanson made the above-described misrepresentations and engaged in such conduct to induce State Farm Mutual and State Farm Fire into relying on the misrepresentations and to induce State Farm Mutual and State Farm Fire into paying Hanson Chiropractic's false, misleading, and fraudulent bills.

99.     State Farm Mutual and State Farm Fire were unaware of the false, misleading, and fraudulent nature of the statements at the time they issued payments to Hanson Chiropractic.

100.     State Farm Mutual and State Farm Fire had a right to rely upon, and did in fact rely upon, the truth of Hanson's misrepresentations in making claims decisions and in issuing payments to Hanson Chiropractic.

101.     As a result of State Farm Mutual's and State Farm Fire's reliance on Hanson's misrepresentations, State Farm Mutual and State Farm Fire collectively suffered damages in excess of $300,000.00. *See* Amounts Paid Summary Chart, a copy of which is attached as **Exhibit L**.

WHEREFORE, State Farm Mutual and State Farm Fire demand judgment against Defendants Hanson Chiropractic and Dr. Hanson for compensatory damages, costs, and other such relief as this Court deems equitable, just and proper.

COMPLAINT – Page 24
Cause No. _____

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**Count II: Unjust Enrichment**

**(All Defendants)**

102.    State Farm Mutual and State Farm Fire incorporate, adopt and re-allege as though fully set forth herein, each and every allegation in Paragraphs 1 through 91 above.

103.    Defendants Hanson Chiropractic and Dr. Hanson understood that their submission of medical bills and supporting documentation would form the basis of State Farm Mutual's and State Farm Fire's evaluations of the patients' claims and decisions of whether to pay Hanson Chiropractic's bills.

104.    State Farm Mutual and State Farm Fire conferred a benefit upon Hanson Chiropractic and Dr. Hanson by paying Hanson Chiropractic's bills for services purportedly provided to State Farm Mutual and State Farm Fire insureds who treated at Hanson Chiropractic.

105.    Hanson Chiropractic and Dr. Hanson voluntarily accepted and retained the benefit of State Farm Mutual's and State Farm Fire's payments.

106.    Hanson Chiropractic and Dr. Hanson each played a vital role in the scheme and directly benefited from the scheme.

107.    Because Hanson Chiropractic and Dr. Hanson knowingly billed for services that were not rendered, were not medically necessary, were not reasonable/related, were performed in violation of Washington law, and/or were not supported by the medical records, the circumstances are such that it would be inequitable to allow Hanson Chiropractic and Dr. Hanson to retain the benefit of State Farm Mutual's and State Farm Fire's payments.

108.    The money received by Hanson Chiropractic from State Farm Mutual and State Farm Fire, to which Hanson Chiropractic was not entitled, has unjustly enriched Hanson Chiropractic and Dr. Hanson at State Farm Mutual's and State Farm Fire's expense.

COMPLAINT – Page 25
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    109.    As a direct and proximate result of the above-described conduct of Hanson

2    Chiropractic and Dr. Hanson, State Farm Mutual and State Farm Fire have been collectively

3    damaged and Hanson Chiropractic and Dr. Hanson have been enriched by more than

4    $300,000.00. *See* Amounts Paid Summary Chart (**Exh. L**).

5    WHEREFORE, State Farm Mutual and State Farm Fire demand judgment against

6    Defendants Hanson Chiropractic and Dr. Hanson for compensatory damages plus interest and

7    costs, and for such other relief as the Court deems equitable, just and proper.

8    **Count III: Declaratory Judgment**

9    **(Hanson Chiropractic)**

10    110.    State Farm Mutual and State Farm Fire incorporate, adopt and re-allege as

11    though fully set forth herein, each and every allegation in Paragraphs 1 through 91 above.

12    111.    State Farm Mutual and State Farm Fire seek declaratory relief pursuant to 28

13    U.S.C. § 2201.

14    112.    There is an actual case and controversy between State Farm Mutual and State

15    Farm Fire, on the one hand, and Hanson Chiropractic, on the other hand, as to all charges for

16    examinations, diagnoses, treatments, and services purportedly provided to patients who

17    treated at Hanson Chiropractic that have not been paid to date or that remain unpaid during

18    the pendency of this litigation. State Farm Mutual and State Farm Fire contend that Hanson

19    Chiropractic is not entitled to reimbursement for any of the charges for treatment that were the

20    product of Hanson's Predetermined Treatment Plan.

21    113.    Because Hanson Chiropractic has made false, misleading, and fraudulent

22    statements and otherwise engaged in the above-described fraudulent, improper and/or illegal

23    conduct, Hanson Chiropractic is not entitled to reimbursement for any claims or charges

24

COMPLAINT – Page 26
Cause No. _____

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    submitted to State Farm Mutual or State Farm Fire to date and through the pendency of this

2    litigation.

3        WHEREFORE, State Farm Mutual and State Farm Fire respectfully request a

4    judgment declaring that Hanson Chiropractic is not entitled to reimbursement or payment for

5    any unpaid charges for the examinations, diagnoses, and treatments purportedly provided to

6    patients at Hanson Chiropractic from January 1, 2009 through the date of this filing and

7    through the pendency of this litigation, and for supplementary relief, attorneys' fees, interest,

8    and costs as this Court deems equitable, just, and proper.

9                    ## XI.    DEMAND FOR A JURY TRIAL

10       State Farm Mutual and State Farm Fire hereby demand a trial by jury on all issues so

11   triable.

12       DATED this 14th day of July, 2016.

13                            *s/ Steven W. Fogg*
                             *s/ Todd T. Williams*
14                           Steven W. Fogg, WSBA No. 23528
                             Todd T. Williams, WSBA No. 45032
15                           CORR CRONIN MICHELSON
                             BAUMGARDNER FOGG & MOORE LLP
16                           1001 Fourth Avenue, Suite 3900
                             Seattle, Washington 98154
17                           (206) 625-8600 Phone
                             (206) 625-0900 Fax
18                           sfogg@corrcronin.com
                             twilliams@corrcronin.com
19
                             David I. Spector, Fla. Bar No. 0086540
20                           Kayla L. Pragid, Fla. Bar No. 0098738
                             AKERMAN LLPA
21                           777 S. Flagler Drive, West Tower, Suite 1100
                             West Palm Beach, Florida 33401
22                           (561) 653-5000 Phone
                             (561) 659-6313 Fax
23                           David.Spector@Akerman.com
                             Kayla.Pragid@Akerman.com
24                           *Pro Hac Vice Applications to Be Filed*
                             *Attorneys for Plaintiffs*

COMPLAINT – Page 27
Cause No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900