THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY,<br><br>                              Plaintiffs,<br><br>v.<br><br>PETER J. HANSON, P.C. D/B/A HANSON CHIROPRACTIC and PETER J. HANSON,<br><br>                              Defendants. | No. 2:16-cv-01085-RSL<br><br>**STATE FARM MUTUAL'S AND STATE FARM FIRE'S RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE COUNTERCLAIM**<br><br>**NOTE ON MOTION CALENDAR: MAY 12, 2017** |

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM  (No. 2:16-cv-01085-RSL)

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1        Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire and

2   Casualty Company (collectively, "the State Farm Plaintiffs") oppose defendants Peter J. Hanson,

3   P.C. d/b/a Hanson Chiropractic ("Hanson Chiropractic") and Peter J. Hanson's ("Dr. Hanson")

4   (collectively, "Defendants") motion for leave to file amended counterclaims for the reasons

5   explained below.

6   **INTRODUCTION**

7        Defendants' request for leave to file amended counterclaims should be denied because: (1)

8   Defendants' proposed amendments are futile because their proposed amended pleading does not

9   state plausible claims for relief; and (2) Defendants' unreasonable delay in seeking leave to file

10  amended counterclaims inevitably will result in Defendants' seeking to alter the Court's

11  scheduling order and cause undue delay.[1] Defendants seek to assert amended counterclaims for

12  defamation, violation of the Washington Consumer Protection Act, and tortious interference with

13  business expectancy. All of these proposed claims are premised on the same allegations that the

14  State Farm Plaintiffs: (1) engaged in a scheme to manufacture a predetermined treatment claim

15  against Defendants; and (2) made allegedly defamatory statements to the National Insurance

16  Crime Bureau, insureds, claimants, and lawyers for insureds and claimants. Despite the rhetoric

17  permeating their proposed counterclaims, Defendants' claims are deficient as a matter of law, and

18  therefore futile, because, among other reasons:

19        ▪ The State Farm Plaintiffs are immune from liability as a matter of law based on
20           their reporting of suspected fraud to the National Insurance Crime Bureau unless
             Defendants allege facts constituting actual malice, which they fail to do. *See*
21           Wash. Rev. Code § 48.050.070.

22         ▪ Defendants' allegations, when stripped of the conclusory assertions of purported
             bad intent, do not plausibly state a claim for relief because, among other reasons,
23           the actual conduct alleged is equally consistent with the State Farm Plaintiffs'
             duty under Washington law to identify and investigate insurance fraud.
24

25  [1] Many of Defendants' allegations are absolutely and categorically false; however, the State Farm Plaintiffs accept the non-conclusory allegations of fact as true solely for purpose of responding to Defendants' motion for leave.

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 1   (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

## **ARGUMENT**

2       A district court "may deny leave to amend due to 'undue delay, bad faith or dilatory

3 motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

4 allowed, undue prejudice to the opposing party by virtue of allowance of amendment, [and]

5 futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008)

6 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Whether to grant leave to amend is within

7 the discretion of the court. *Id.*

8 **A.     The Court Should Deny Leave to Amend Because Defendants' Proposed Amended
        Counterclaims Do Not Adequately State a Claim for Relief.**

9       Leave to amend is appropriately denied where the proposed amendment fails to state a

10 claim for relief. *See, e.g., Roupe v. Strickland*, No. C13-2131-JCC, 2014 WL 3739505, at *2

11 (W.D. Wash. July 29, 2014) (denying leave to amend § 1983 claim where plaintiff failed to

12 plausibly allege that defendant was deliberately indifferent to the risk of a constitutional

13 violation); *Schweickert v. Hunts Point Ventures, Inc.*, No. 13-CV-675RSM, 2014 WL 6886630, at

14 *7 (W.D. Wash. Dec. 4, 2014) (denying leave to amend because complaint failed to plead viable

15 claims). Here, Defendants' amended allegations do not state a claim for relief, and thus, should

16 not be permitted.

17       To avoid dismissal, a claim must be "facially plausible," such that it "pleads factual

18 content that allows the court to draw the reasonable inference that the defendant is liable for the

19 misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

20 *Twombly,* 550 U.S. 544, 556 (2007)). A court is not required to accept as true "allegations that are

21 merely conclusory, unwarranted deductions of facts, or unreasonable inferences." *Sprewell v.*

22 *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended in non-relevant part on*

23 *denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001); *see also Twombly*, 550 U.S. at 559. "Where a

24 complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

25 the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 2    (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    (quoting *Twombly*, 550 U.S. at 557). Looking beyond the conclusory and unsupported allegations

2    of bad intent, neither Defendants' allegations of actual facts nor the three documents Defendants

3    offer as support nudge Defendants' claims from merely possible to plausible.

4    As a threshold matter, all of the State Farm Plaintiffs' alleged conduct must be considered

5    in context. "Determining whether a complaint states a plausible claim for relief will, as the Court

6    of Appeals observed, be a context-specific task that requires the reviewing court to draw on its

7    judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Insurance is

8    a highly regulated industry and the State Farm Plaintiffs must comply with Washington's

9    statutory and regulatory framework. Among other things, the Washington legislature passed

10   legislation "to confront the problem of insurance fraud in this state by making a concerted effort

11   to detect insurance fraud, . . . , and reduce the amount of premium dollars used to pay fraudulent

12   claims." Wash. Rev. Code § 48.135.005. The legislature explained that "[t]he primary focus of

13   the insurance fraud program is on <u>organized fraudulent activities committed against insurance</u>

14   <u>companies</u>." *Id.* (emphasis added). Accordingly, insurers must "institute and maintain an

15   insurance antifraud plan." *Id.* § 48.30A.045. Each insurer "must establish specific procedures to:

16   (1) [p]revent insurance fraud, including . . . claims fraud; (2) [r]eview claims in order to detect

17   evidence of possible insurance fraud and to investigate claims where fraud is suspected; . . . (4)

18   [u]ndertake civil actions against persons who have engaged in fraudulent activities; . . ." *Id.* §

19   48.30A.050. Each year, the State Farm Plaintiffs are required to "provide to the insurance

20   commissioner a summary report on actions taken under its antifraud plan to prevent and combat

21   insurance fraud." *Id.* § 48.30A.060. The report must include, among other things, "statistical data

22   on the amount of resources committed to combatting fraud, and the amount of fraud identified

23   and recovered during the reporting period." *Id.* It is against this regulatory backdrop that the State

24   Farm Plaintiffs' alleged actions must be evaluated.

25

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 3    (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

2

    **1.    Defendants' Proposed Claims Based on the State Farm Plaintiffs' Communications to the NICB Are Not Actionable Under the Governing Washington Immunity Statute.**

3

    All three of Defendants' amended counterclaims are based in part on the State Farm

4

Plaintiffs' reporting to the NICB. Consistent with their statutorily-imposed duties to investigate

5

and combat insurance fraud, insurers like the State Farm Plaintiffs are required by law to report to

6

the Washington Insurance Commissioner or the National Insurance Crime Bureau ("NICB")

7

when an insurer has a "reasonable belief that an act of insurance fraud . . . has been, is being, or is

8

about to be committed." Wash. Rev. Code § 48.135.050. To protect insurers from potential

9

liability when they comply with their legal duty to investigate and report insurance fraud, the

10

legislature granted insurers immunity from "<u>any civil or criminal action</u>, suit, or prosecution

11

arising from the release of the information" by an insurer to the "the national insurance crime

12

bureau . . . unless actual malice on the part of the . . . insurer . . . against the insured is shown."

13

*See id.* § 48.50.070 (emphasis added). Thus, Defendants are legally barred from maintaining <u>any</u>

14

<u>claim</u> (not just a defamation claim) based on the State Farm Plaintiffs' disclosures to the NICB

15

unless Defendants meet their burden of pleading facts demonstrating actual malice.

16

    The State Farm Plaintiffs did not locate any case law defining or interpreting actual malice

17

in the context of § 48.50.070; however, the actual malice standard of fault is well-established

18

under Washington defamation law. Actual malice means that the State Farm Plaintiffs either

19

knew their statements were false or made the statements with reckless disregard as to their falsity.

20

*See, e.g., Momah v. Bharti*, 144 Wash. App. 731, 742 (2008); *Wood v. Battle Ground Sch. Dist.*,

21

107 Wash. App. 550, 569 (2001). Reckless disregard may be found "where there are obvious

22

reasons to doubt the veracity" of the information published. *Duc Tan v. Le*, 177 Wash. 2d 649,

23

669 (2013) (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Stated more plainly,

24

reckless disregard requires "sufficient evidence to permit the conclusion that the defendant in fact

25

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 4   (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731; *see also*

2   *U.S. ex rel. Klein v. Omeros Corp.*, 897 F. Supp. 2d 1058, 1076 (W.D. Wash. 2012).

3       Federal court pleading standards require actual malice to be pleaded with sufficient facts

4   to render the allegation plausible. *See Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015), *cert.*

5   *denied*, -- U.S. --, 136 S. Ct. 2015 (2016) (requiring defamation plaintiff to plead facts sufficient

6   to render his allegations of actual malice plausible); *Pippen v. NBCUniversal Media, LLC*, 734

7   F.3d 610, 614 (7th Cir. 2013) (plaintiff "must point to details sufficient to render a claim [of

8   actual malice] plausible"); *Schatz v. Republican State L'ship Comm.*, 669 F.3d 50, 58 (1st Cir.

9   2012) ("[T]o make out a plausible malice claim, a plaintiff must still lay out enough facts from

10  which malice might reasonably be inferred").

11      Defendants allege "State Farm Fire[2]" reported to the NICB that it had "a reasonable

12  belief" that Defendants "may have engaged in fraudulent insurance acts," that "a review of

13  Hanson Chiropractic's billing and medical records reveals that the treatments being rendered by

14  Hanson Chiropractic are often not medically necessary," and "[n]early all patients are given

15  predetermined diagnoses and treatment plans that are not created for the individualized needs of

16  the patient." (Dkt. No. 48-1, Proposed Am. Countercl. ¶¶ 130-131.) Crucially, the proposed

17  amended counterclaim is devoid of non-conclusory facts showing the State Farm Fire <u>knew</u> the

18  Defendants were <u>not</u> engaged in insurance fraud or entertained serious doubts about the truth of

19  its reported reasonable belief that Defendants may have engaged in insurance fraud.

20      Defendants' allegations that, for example, "State Farm has no evidence to support a claim

21  that Dr. Hanson committed fraud of any kind" and "MCIU targeted Dr. Hanson as a project for no

22  other reason than his practice was a significant source of claim expense to State Farm" (*id.* ¶¶ 78,

23  80), are too conclusory and implausible to overcome the statutory immunity. *See Twombly*, 550

24

---

25  [2] There is no corresponding allegation concerning State Farm Mutual and, for this reason, the claim fails as to State Farm Mutual.

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 5   (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

U.S. at 559; *Sprewell*, 266 F.3d at 988.  These kinds of allegations are akin to the allegations of discrimination in *Iqbal*, where the plaintiff alleged that the defendants subjected him to harsh condition of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." *Iqbal*, 556 U.S. at 680. The Supreme Court explained that the allegations were not entitled to the presumption of truth because they were conclusory. *Id.* at 680-81. Even if the allegation that the State Farm Plaintiffs "targeted" Defendants for investigation because they were high billers was accepted as true[3], it does not lead to the necessary conclusory inference that the State Farm Plaintiffs truly believed that Defendants were innocent of insurance fraud, but reported them to the NICB anyway.

There is no factual support in the proposed counterclaims for Defendants' theory that the State Farm Plaintiffs fabricated a claim of protocol treatment as evidence of fraud so they could report Defendants to the NICB. Defendants do not point to a single fact to support that facially implausible and conclusory theory or even explain what exactly the State Farm Plaintiffs "manufactured." To the contrary, Defendants' allegations rebut their theory of fabrication because they demonstrate that the State Farm Plaintiffs conducted an extensive investigation before reporting to the NICB. The few well-pleaded fact allegations reflect that the State Farm Plaintiffs fulfilled their statutory duty to identify and investigate fraud and to quantify the amount of fraud identified by conducting an appropriate investigation, including for example:

  ▪ That SIU Analyst Kevin "MacElroy completed a screener tool, which included doing a Connected Provider Analysis, CPT [Code] Analysis[4], and Provider Exposure Analysis concerning Dr. Hanson and Hanson Chiropractic." (Am. Countercl. ¶ 82.)

---

[3] To be clear, the allegation is not true and is, in fact, contradicted by Exhibit A to the proposed amended counterclaim, which identifies a number of considerations for opening an investigation concerning Defendants.

[4] "CPT" refers to the Current Procedural Terminology, which is a set of five-digit numeric codes developed by the American Medical Association. The codes are used to identify and bill outpatient and office treatment and services. *See* https://www.ama-assn.org/practice-management/cpt%C2%AE-process-how-code-becomes-code (last visited May 8, 1017).

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

- "On January 8, 2015, Ms. West wrote a 'Multi-Claim Investigation Project Recommendation' to her Claim Team Manager, Brian Neuhaus, recommending the creation of a formal Hanson Chiropractic Project." (Am. Countercl. ¶ 90; *see also* Am. Countercl. Ex. B, which is the Report.)

- "On April 8, 2015, McLellan sought and obtained approval from her Section Manager, Brian Garrett, and her Team Manager, Ron Ikens, for the issuance of a TIN Diversion of all bills received from Hanson Chiropractic." (Am. Countercl. ¶ 96.)

- ". . . Ms. McLellan researched public databases for negative information related to Dr. Hanson, such as disciplinary complaints and malpractice suits." (Am. Countercl. ¶ 103.)

- ". . . Ms. Mierke was regularly submitting data and reports and information to the PFMT [Potential Fraud Management Tool] database." (Am. Countercl. ¶ 113.)

Moreover, some of Defendants' "fact" allegations purportedly showing the State Farm Plaintiffs' actual malice are contradicted by the very exhibits Defendants attach to their proposed amended counterclaim. The Court is not required to accept allegations that are contradicted by documents attached to a complaint. *See, e.g., Sprewell*, 266 F.3d at 990; *Swartz v. Deutsche Bank*, No. C03-1252MJP, 2008 WL 1968948, at *5 (W.D. Wash. May 2, 2008). For example, Defendants allege that "Ms. West instructed MacElroy to work up data to support a 'Protocol Treatment Claim' (PTC) against Dr. Hanson." (Am. Countercl. ¶ 85-86.)  However, Exhibit A to the proposed amended counterclaim reveals that Ms. West did no such thing. Ms. West emailed Mr. MacElroy explaining that:

> I am just starting my file reviews and noticed what appears to be a pattern with regard to treatment of patients. X-rays up front (72070, 72100, 72052) with repeating x-rays around the 3 month mark (72020 & 72040). I have also noticed people getting "orthotic instruction"/97760, adjustments to 3-4 areas/98941 and mechanical traction/97012.[5]
>
> I am wondering if you might be able to do a work up on protocol treatment for me? . . . WA is a PIP state and it seems analytics might be able to put together a picture of the treatment this provider is billing more quickly than I can!

---

[5] These five-digit codes are the CPT codes Hanson Chiropractic billed for its services.

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

(Am. Countercl. Ex. A at 2.)  There is absolutely no instruction that Mr. MacElroy manufacture non-existent evidence of a pattern of treatment and there is no reference to a "Protocol Treatment Claim." Ms. West was simply asking for analytics that would assist her in evaluating the treatment Hanson Chiropractic was billing and whether it was indicative of a pattern given what she noticed in her initial file reviews. Conducting an investigation, which includes analyzing data to determine whether evidence of fraud exists (such as a predetermined pattern of treatment) itself rebuts, rather than establishes, knowledge of falsity or that State Farm Fire entertained serious doubts as to the existence of fraud. Defendants fail to identify facts establishing the actual malice that the Washington immunity statute requires to state a claim based on reporting to the NICB. That failure is fatal to all three claims in the proposed amended counterclaim insofar as they are based on the State Farm Plaintiffs' reporting to the NICB.

### 2.    Defendants' Proposed Defamation Claim Fails As a Matter of Law.

In addition to State Farm Fire's reporting of Defendants to the NICB (discussed above), Defendants' defamation claim is premised on letters the State Farm Plaintiffs sent to State Farm insureds, claimants, and their counsel.[6] These letters simply explained that the State Farm Plaintiffs were denying payment of Hanson Chiropractic's bills because 'the matters giving rise to the charges are at issue in a pending civil lawsuit between Hanson Chiropractic and State Farm' or some similar statement." (Am. Countercl. ¶ 143.) These are the very same communications Defendants complained about in their original counterclaim – a claim this Court already dismissed as being legally insufficient. Defendants' second stab at pleading a defamation claim based on these innocuous and legally required communications is as meritless now as it was when

---

[6] Defendants make passing reference to "oral statements" (Am. Countercl. ¶ 153; *see also id.* ¶¶ 152, 154); however, they identify absolutely no allegedly false oral statement or any other detail concerning such statements, as would be required to state a defamation claim. *See, e.g., Phillips v. Seattle Times Co.*, 818 F. Supp. 2d 1277, 1283-84 (W.D. Wash. 2011) (dismissing defamation claim because plaintiff failed to allege "what statements were actually made by the Seattle Times" and "when or where such statements were made"); *Oriko v. Starbucks Corp.*, No. C07-5230-FDB, 2007 WL 3228443, at *2 (W.D. Wash. Oct. 31, 2007) (dismissing defamation claim where no allegations regarding "the substance of the allegedly defamatory statements and the time and place in which they were made").

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    Defendants first asserted it. The letters in question are not false and defamatory, do not constitute

2    defamation per se, and were protected by a qualified privilege.

3                    **a.      No False Statement Capable of Defamatory Meaning.**

4            Defendants' proposed amended defamation counterclaim suffers from the same defect

5    their first defamation claim did:  The only statements alleged do not indicate that the State Farm

6    Plaintiffs made any false statements about the Defendants. As a threshold matter, Defendants do

7    not allege that the statement concerned Dr. Hanson.[7] Dr. Hanson's defamation claim is fatally

8    deficient because he does not allege any false statements were made about him. The alleged

9    statement – "the matters giving rise to the charges are at issue in a pending civil lawsuit between

10   Hanson Chiropractic and State Farm" – concerns only Hanson Chiropractic and is neither false

11   nor defamatory. Consequently, the statement does not support a claim for defamation.

12           First, Defendants do not contend that the alleged statement is false. Indeed, the charges in

13   question are at issue in this action as stated in the letters and Defendants do not allege otherwise.

14   This Court already determined that this alleged statement did not comment on the quality of Dr.

15   Hanson's care and "simply report[ed] that there is ongoing litigation between the parties," which

16   did not "plead facts allowing an inference that plaintiffs have made any false statements." (Dkt.

17   No. 36 at 5.)

18           Second, the alleged statement is not defamatory. Defamatory meaning may not be imputed

19   to true statements. *See, e.g., Yeakey v. Hearst Commc'ns, Inc.*, 156 Wash. App. 787, 792 (2010);

20   *Lee v. Columbian, Inc.*, 64 Wash. App. 534, 538 (1991). Even if the statement were false, not

21   every false statement is actionable as defamation. A communication is defamatory if "the

22   substance of the statement makes substantial danger to reputation apparent." *Sisley v. Seattle*

23   *Public Sch.*, 180 Wash. App. 83, 87 (2014). "The defamatory character of the language must be

24

25   [7] In fact, the letters did not mention Dr. Hanson. (*See* Dkt. 17-1 (example of letter attached to Defendants' original counterclaims).)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

apparent from the words themselves." *Id.*; *see also Yeakey*, 156 Wash. App. at 792. Courts are not permitted to "extend language by innuendo or by the conclusions of the pleader." *Yeakey*, 156 Wash. App. at 792. Here, the statement that the matters giving rise to the charges are at issue in a pending lawsuit does not place the reputations of Defendants in any substantial danger.

In an attempt to overcome this obvious defect, Defendants assert, in conclusory fashion, that "[t]he purpose of these letters is to specifically direct patients and lawyers to the fact that State Farm has accused Dr. Hanson of fraud, and so that the lawsuit can have the above-described deterrent effect intended." (Am. Countercl. ¶ 144.)  This allegation does not suffice because it would require the Court to impermissibly impute a meaning far beyond the actual language of the alleged statement based on Defendants' innuendo. Further, despite Defendants' assertion concerning the "purpose" of the letters, the letters did not identify the lawsuit, the court in which it is pending, the case number or anything else that would allow the recipient of the letter to readily locate the "civil litigation" to which the letters refer. (*See* Dkt. No. 17-1.) The letters did not even identify whether Hanson Chiropractic was the plaintiff or the defendant, such that the reader could infer that, because Hanson Chiropractic was named as the defendant, it had done some unspecified wrong.  Under these circumstances, there is no defamatory meaning that recipients of the letters could glean from the content of the letters.

### b.    No Defamation Per Se.

Defendants purport to assert a claim for defamation per se. (*See* Am. Countercl. ¶ 158.)  A publication is defamatory per se only if it "(1) exposes a living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office." *Life Designs Ranch, Inc. v. Sommer*, 191 Wash. App. 320, 328 (2015), *review denied*, 185 Wash. 2d 1022 (2016). A statements is actionable per se only if it is so obviously and materially harmful to a plaintiff that damage may be presumed, thereby relieving the plaintiff of the burden of pleading and proving special

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 10   (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    damages. *See, e.g., Life Designs*, 191 Wash. App. at 328-29; *Davis v. Fred's Appliance, Inc.*, 171

2    Wash. App. 348, 367 (2012) ("General damages are recoverable only from defamation per se.).

3           Defendants do not plead facts demonstrating a defamatory statement, much less

4    defamation per se. They do not explain how the statement that "the matters giving rise to the

5    charges are at issue in a pending civil lawsuit" would expose Defendants to hatred, contempt or

6    ridicule or injure them in their business trade or office. In *Block v. Washington State Bar*

7    *Association*, for example, the court considered whether a plaintiff pleaded defamation per se

8    where the plaintiff, an attorney, alleged that the bar association posted a story stating that a

9    hearing was scheduled concerning her "misconduct as an attorney." No. C15-2018-RSM, 2016

10   WL 7734884, at *3 (W.D. Wash. Apr. 19, 2016). The court found "as a matter of law that the

11   statement [did] not rise to the level of 'extreme' needed to constitute defamation *per se*." *Id.*; *see*

12   *also Life Designs*, 191 Wash. App. at 329 (finding website statements did "not rise to the level of

13   'extreme' need[ed] to constitute defamation per se"). Here, the statement at issue is even more

14   innocuous than the statement at issue in *Block* and merely makes reference to a "pending civil

15   lawsuit" without making mention of any "misconduct." Because Defendants fail to plead a claim

16   for defamation per se, they must plead and prove special (actual) damages, which they do not.

17          Federal Rule of Civil Procedure 9(g) requires special damages to be "specifically stated."

18   *See also Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 295 (2012) ("'Special damages' are

19   limited to actual pecuniary loss, which must be specially pleaded and proved."). Defendants

20   allege special damages in only the most conclusory of manners by asserting that Defendants

21   "suffered actual damages and/or special harm including monetary and/or out of pocket loss

22   caused by State Farm's defamations." (Am. Countercl. ¶ 160.)  These unadorned, nonspecific

23   allegations are insufficient. For example, in *Purvis v. Bremer's, Inc.*, 54 Wash. 2d 743, 747

24   (1959), the Washington Supreme Court explained that "[u]nless a publication constitutes a libel

25   *per se*, special damages must be alleged and proven" and held that "the general allegation that the

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 11   (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  publication has 'injured the plaintiff in the practice of his profession, thereby causing plaintiff

2  special damages in the sum of $75,000.00' is insufficient to place the issue of special damages

3  before the court." *See also Knight v. Climbing Magazine*, 615 Fed. App'x 409 (9th Cir. 2015)

4  (affirming dismissal of defamation claim where plaintiff "failed to allege sufficient facts

5  evidencing . . . that he suffered special damages"). Defendants' failure to state a per se claim and

6  to plead the special damages required to state a non-per se claim are fatal.

7            **c.**    **Qualified Privilege Applies.**

8        Defendants' defamation claim fails for the independent reason that a qualified privilege

9  applies to the State Farm Plaintiffs' communications to insureds, claimants, and their lawyers

10  concerning the reason payment was denied, and Defendants fail to plead facts plausibly meeting

11  their burden to overcome that privilege. A qualified common interest privilege applies where the

12  publisher and the recipient of an allegedly defamatory communication share a common interest in

13  the subject matter of the communication. *See, e.g., Brawley v. Rouhfar*, 162 Wash. App. 1058,

14  No. 65399-7-I, 2011 WL 2993467, at *6 (July 25, 2011) ("A qualified privilege based on a

15  common interest arises if there is a common interest in the subject matter being communicated

16  between the declarant and the recipient."); *Wiseman v. Wendel*, 131 Wash. App. 1033, No. 23958-

17  6-III, 2006 WL 302763, at *4 (Feb. 9, 2006) ("One type of privileged communication occurs

18  when an otherwise defamatory statement is shared with a third person who has a common interest

19  in the subject and is reasonably entitled to know the information."). The determination of whether

20  a qualified privilege applies to a communication is a question of law for the court. *Wood*, 107

21  Wash. App. at 568; *Moe v. Wise*, 97 Wash. App. 950, 957-58 (1999).

22        Here, the qualified privilege applies as a matter of law because the State Farm Plaintiffs,

23  insureds, claimants, and their counsel shared a common interest in the subject of the allegedly

24  defamatory letters. Under Washington law, State Farm Mutual and State Farm Fire are required to

25  "provide a reasonable explanation of the basis" for a denial of a claim. Wash. Admin. Code §

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 12   (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

284-30-330. Accordingly, the recipients of the allegedly defamatory letters were entitled to know the reason that Hanson Chiropractic's bills were being denied such that the qualified privilege applies. Where a qualified privilege applies, the burden is on the defamation plaintiff seeking to show that the privilege has been abused to establish an abuse of that privilege by alleging facts showing actual malice. *See, e.g., Moe*, 97 Wash. App. at 962-63. As noted above, actual malice means that the publisher made the statements to the recipients with the knowledge that the statements were false or that there were obvious reasons to doubt the truth of the statements.

For the same reasons that Defendants fail to allege actual malice in connection with State Farm Fire's alleged statements to the NICB, Defendants also fail to sufficiently allege facts indicating the State Farm Plaintiffs made the alleged statements to the insureds, claimants, and their counsel with actual malice. Defendants' conclusory allegations that the State Farm Plaintiffs "acted negligently, recklessly, wantonly, willfully, deliberately, and/or maliciously in making the described statements" and that "State Farm and its authorized representatives have abused that privilege" (Am. Countercl. ¶¶ 162-163) are plainly insufficient under *Twombly* and *Iqbal*. Courts routinely dismiss defamation claims at the pleading stage where, as here, the face of a complaint shows that a communication falls within the qualified privilege and the plaintiff fails to allege facts demonstrating that the defendant abused the privilege by making the statements with the requisite malice. *See, e.g., Hohmann v. GTECH Corp.*, 910 F. Supp. 2d 400, 407 (D. Conn. 2012); *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 335 (S.D.N.Y. 2010); *Turner v. Fed. Express Corp.*, 530 F. Supp. 2d 404, 410 (D.D.C. 2008); *Porter v. Nationwide Mut. Ins. Co.*, No. 2:16-cv-1933, 2017 WL 772139, at *5 (E.D. Cal. Feb. 28, 2017). Here, Defendants do not plead facts showing that the State Farm Plaintiffs abuse their qualified privilege to report the information in the letters by making the statements with the necessary knowledge or recklessness. As a result, the proposed defamation claim based on the letters is futile.

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 13    (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE** LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

      3.       **Defendants Do Not State a Claim for Violation of the Washington Consumer Protection Act.**

2

      The Washington Consumer Protect Act ("CPA") requires a plaintiff to show: (1) an unfair

3

or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest;

4

(4) injury to the plaintiff's business or property; (5) as a result of the unfair or deceptive act or

5

practice. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 37 (2009) (citing *Hangman*

6

*Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986).) Defendants'

7

CPA claim suffers from similar infirmities as their original CPA claim – they do not allege

8

sufficient non-conclusory facts demonstrating that the State Farm Plaintiffs acted unreasonably or

9

committed an actionable per se violation.

10

            a.      **Unfair or Deceptive Act or Practice.**

11

      A CPA claim may be predicated on "a per se violation of statute, an act or practice that

12

has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or

13

practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 176

14

Wash. 2d 771, 787 (2013). Defendants assert that the State Farm Plaintiffs committed a per se

15

unfair or deceptive act or practice and also that the State Farm Plaintiffs engaged in an otherwise

16

deceptive act or practice not regulated by statute but in violation of the public interest. (Am.

17

Countercl. ¶¶ 167-171.) "Whether a particular act or practice is 'unfair or deceptive' is a question

18

of law." *Panag*, 166 Wash. 2d at 47.

19

            i.      <u>Per Se Deception or Unfairness</u>

20

      A per se unfair or deceptive trade practice is one that "violates a statute defining an unfair

21

or deceptive act in trade or business." *May v. Honeywell Int'l, Inc.*, 331 Fed. App'x 526, 529 (9th

22

Cir. 2009) (applying Washington law). First, Defendants assert that the State Farm Plaintiffs

23

committed a per se unfair act or practice because, according to Defendants, the State Farm

24

25

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiffs' "deliberate and calculated effort to manufacture false claims of fraud[8] against Dr. Peter Hanson and Hanson Chiropractic constitute[s] unfair claims settlement practices" in violation of various subsections of Washington Administrative Code § 284-30-330. (Am. Countercl. ¶ 167.) Defendants, however, fail to allege what the State Farm Plaintiffs did to "manufacture false claims of fraud." Defendants point to no purportedly manufactured evidence nor do they explain why the State Farm Plaintiffs' allegations that Defendants engaged in a predetermined treatment scheme are wrong.

"[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). In *Iqbal*, a § 1983 case, the Court refused to credit allegations that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [Iqbal]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest," that John Ashcroft was the "principal architect" of this invidious policy, and that Mueller was "instrumental" in adopting and executing it. *Iqbal*, 556 U.S. at 680-81. Similarly, here, Defendants make numerous unadorned, conclusory assertions that are not entitled to be accepted as true, such as the following examples:

- ". . . State Farm attempts to manufacture a presumption of fraud based on overall billing and treatments rendered by a doctor over a course of several years." (Am. Countercl. ¶ 45.)

- "State Farm's lawsuits alleging fraud against doctors created as a result of projects are purposefully designed to have a chilling effect on doctors who bill State Farm." (*Id.* ¶ 46.)

---

[8] To the extent Defendants' claims are premised on the State Farm Plaintiffs allegations and claims against Defendants in this lawsuit, the statements are absolutely privileged and not a permissible basis for Defendants' claims. Under Washington law "the defense of absolute privilege generally applies to statements made in the course of judicial proceedings and acts as a bar to any civil liability." *Deatherage v. State, Examining Bd. of Psychology*, 134 Wash. 2d 131, 135 (1997); *see also Jeckle v. Crotty*, 120 Wash. App. 374, 386 (2004).

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 15     (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

- "State Farm tracks the frequency with which medical providers share patients in common <u>in the hope that State Farm can characterize them as 'co-conspirators' in a project</u>." (*Id.* ¶ 55 (emphasis added to conclusory portion).)

- "State Farm does not care about, nor does it even bother to identify, actual 'fraud.' The purpose of a medical provider project and lawsuit accusing a doctor of fraud is to eliminate the doctor as a source of claim expense to State Farm alone and deter other doctors in the community from billing State Farm or challenging its payment decisions." (*Id.* ¶ 70.)

- "MCIU targeted Dr. Hanson as a project for no other reason than his practice was a significant source of claim expense to State Farm." (*Id.* ¶ 80.)

- "State Farm had decided to manufacture an accusation of fraud against Dr. Hanson based on 'Protocol Treatment,' perhaps as long ago as 2012, but certainly by mid-2014, and had spent more than a year using the claims of its own insureds to accomplish this goal." (*Id.* ¶ 122.)

As discussed above, Defendants' factual allegations concerning the State Farm Plaintiffs' conduct are consistent with the State Farm Plaintiffs' duty under Washington law to identify and investigate fraud and to quantify the amount of fraud discovered.

Further, the exhibits to Defendants' proposed counterclaim – which are presumably the most damaging documents Defendants identified in the multitude of documents, emails, and claim files produced by the State Farm Plaintiffs – do not assist Defendants in demonstrating a plausible scheme. Exhibit A (the email exchange between Ms. West and Mr. MacElroy discussed above) merely reflects that Ms. West was looking for analytics information to assist her in evaluating the treatment billed by Hanson Chiropractic, not that she was "direct[ing]" anyone to manufacture evidence. (*See* Dkt. No. 48-1 at 29-30.)

Defendants allege that an analysis of "how much Hanson had billed State Farm" and "how much State Farm had paid, . . . without any evidence of fraud, . . . caused State Farm to target Hanson as a project." (Am. Countercl. ¶¶ 83-84). That assertion, however, is contradicted by Exhibit B (the Multi-Claim Investigation Project Recommendation "Recommendation")). The

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 16   (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Recommendation identified various data points and reflects Ms. West's preliminary assessment concerning whether Defendants should be investigated. Among other things, Ms. West noted that:

- "In the files reviewed, 100% of the patients had an initial treatment plan that included being seen three times a week for five weeks."

- "The records on 84% of the patients stated complaints of headaches, cervical, thoracic and lumbar pain. 71% of the patients also seen by another provider did not report the same cervical, thoracic and lumbar complaints noted in the Hanson Chiropractic reports."

- "100% of patients received x-rays at Hanson Chiropractic. 61% of those patients were *re*-x-rayed within approximately 2.5 months. On one file, 13-263H-243, the patient actually had three sets of x-rays done within five months. On that same file, cervical and thoracic x-rays were billed and yet cervical and lumbar x-rays appeared in the file. Both issues would seem to raise issues with regard to radiation exposure and billing for services not rendered and/or improper recordkeeping."

(Dkt. No. 48-1 at 34-35.)   The Recommendation indicates that the State Farm Plaintiffs considered much more than amounts billed and amounts paid in determining whether to investigate Defendants.

Similarly, Exhibit C (Project Activity Log) reflects steps taken to investigate Defendants, as well as communications with counsel. Defendants point to no entry in the Log that purportedly demonstrates any bad intent or efforts by the State Farm Plaintiffs to somehow manufacture a false claim against Defendants. In fact, a review of the Log suggests that the State Farm Plaintiffs conducted a legitimate investigation of Defendants that included, among other things, a painstaking, time-consuming review of the medical records submitted by Defendants and creation of a spreadsheet tracking information obtained from the medical records to assist in evaluating whether Defendants were engaged in a predetermined treatment scheme. (Dkt. No. 48-1 at 37-46.) Information from this spreadsheet eventually became Exhibits A, D and E to the Complaint. The Project Activity Log directly contradicts Defendants' assertion that the State Farm Plaintiffs did

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 17    (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    not "undertak[e] the necessary step of looking at each claim on an individual basis." (Am.

2    Countercl. ¶ 170.)[9]

3        With respect to the allegations concerning the State Farm Plaintiffs' purported conduct in

4    the 1980s and 1990s (Am. Countercl. ¶¶ 1-46), such allegations are both unrelated to the State

5    Farm Plaintiffs' supposed wrongdoing toward Defendants and sufficiently stale that they cannot

6    form the basis for Defendants' CPA claim. *See* Wash. Rev. Code § 19.86.120 (CPA claim must

7    be brought within four years of accrual).

8        Defendants also claim that the State Farm Plaintiffs violated unspecified sections of the

9    Insurance Fair Conduct Act because they "published false written reports, exhibits or statements."

10   (*Id.* at ¶ 168.)   There are two problems with this allegation. First, although not entirely clear,

11   presumably Defendants are referring to their allegations concerning State Farm Fire's report to

12   the NICB and the State Farm Plaintiffs' letters to insureds, claimants, and their counsel because

13   those are the only publications alleged in the proposed pleading. For the reasons explained above,

14   the State Farm Plaintiffs' reporting to the NICB is not a proper basis for any claim. Likewise, as

15   previously discussed, Defendants do not sufficiently allege any false statement made by the State

16   Farm Plaintiffs in their letter to insureds, claimants, and their counsel. Second, Washington's

17   Insurance Fair Conduct Act ("IFCA") created a cause of action by "[a]ny first party claimant to a

18   policy of insurance" against an insurance company for unreasonably denying its insured's claim

19   for coverage or benefits. *See* Wash. Rev. Code § 48.30.015 (emphasis added). "First party

20   claimant" in the context of the IFCA means "an individual, corporation, association, partnership,

21   or other legal entity asserting a right to payment as a covered person under an insurance policy or

22   insurance contract . . ." *Id.* The IFCA was enacted "to protect individual policyholders from unfair

23

24   ---

     [9] Defendants are well aware that the State Farm Plaintiffs did, in fact, review each claim and that information in
25   Complaint Exhibits A, D, and E reflect information that could only be gleaned from looking at Hanson
     Chiropractic's medical records in each and every claim. (*See* Briefing on State Farm Mutual's Motion to Compel
     Better Responses to Requests for Admission, Dkt. Nos. 29 and 34.)

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 18    (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    practices by their insurers." *Trinity Univ. Ins. Co. of Kan. v. Ohio Cas. Ins. Co.*, 176 Wash. App.

2    185, 201 (2013). Consequently, only first party claimants may seek relief based on a violation of

3    the IFCA. *See Karpstein v. Allianz Life Ins. Co. of N. Am.*, C15-966-RSL, 2016 WL 6432535, at

4    *2 (W.D. Wash. Oct. 31, 2016) (granting summary judgment in favor of insurer on IFCA claim

5    where plaintiffs never had a policy with the insurer and, therefore, were not first party claimants).

6    Here, Defendants do not allege that they are (and in fact they are not), first party claimants under

7    their patients' automobile insurance policies. As a result, they have no standing to premise their

8    CPA claim on a purported violation of the IFCA.

9                            ii.    Act or Practice in Violation of the Public Interest

10           An act or practice, although not regulated by statute, may be actionable where it is "in

11   violation of public interest." *Klem*, 176 Wash. 2d at 787. In this regard, Defendants contend that

12   "State Farm contrives PTC's based on a chiropractor's billing without considering whether a

13   chiropractor's treatment for individual patients was reasonable and necessary." (Am Countercl. ¶

14   169.)   Again, as discussed above, the allegation that the State Farm Plaintiffs "contrived" a

15   protocol treatment claim is unsupported by well-pleaded facts. Defendants also allege that

16   "[s]ince issuing a TIN Block on July 14, 2016" (the date this lawsuit was filed), the State Farm

17   Plaintiffs "failed to even review and/or consider the actual treatment rendered by Hanson

18   Chiropractic to State Farm insureds or those with claims against State Farm insureds." (Am.

19   Countercl. ¶ 169; *see also id.* ¶ 180.)   This assertion is unsupported by any allegation of actual

20   fact or any exhibit to the proposed amended pleading. Further, even if the allegation were true,

21   Defendants do not explain why it would be in violation of the public interest for an insurer to

22   refuse to continue to pay a medical provider's bills while a lawsuit is pending in which the insurer

23   alleges that the medical provider is engaged in insurance fraud.

24

25

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 19   (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

                **b.**        **Injury to Business or Property From the Unfair or Deceptive Conduct**

2          A CPA claim requires a "causal link . . . between the unfair or deceptive acts and the

3   injury suffered by plaintiff." *Hangman Ridge*, 105 Wash. 2d 778, 793; *see also Douglas v.*

4   *ReconTrust Co.,* No. C11-1475RAJ, 2013 WL 5356843, at *2 (W.D. Wash. Sept. 25, 2013) ("A

5   plaintiff cannot base a CPA claim solely on a violation of the law, she must also show that the

6   violation caused her an injury."). Defendants' CPA is claim is based in part on their assertion that

7   the State Farm Plaintiffs "published false written reports, exhibits or statements." (Am. Countercl.

8   at ¶ 168.)   Defendants, however, allege no damages resulting from the unspecified reports,

9   exhibits or statements – the only damages identified by Defendants are "the non-payment of bills

10   submitted to State Farm" (*id.* ¶ 180), which has no obvious connection to the purported

11   publications of false statements. Defendants' CPA claim cannot be premised on conduct that

12   caused no injury.

13          Further, an insurer's failure to pay medical expenses for personal injuries is not a

14   cognizable injury to business or property under the CPA because it is derivative of personal

15   injuries. "Expenses for personal injuries are not injuries to business or property under the CPA."

16   *Ass'n of Wash. Public Hosp. Dists. v. Philip Morris, Inc.*, 241 F. 3d 696, 705 (9th Cir. 2001), *cert.*

17   *denied*, 534 U.S. 891 (2001) (rejecting hospitals' CPA claim for increased medical costs alleged

18   to be the product of tobacco companies' conspiracy to suppress less harmful tobacco products);

19   *see also Ambach v. French*, 167 Wash. 2d 167, 173-74 (2009). Here, Defendants' purported

20   injuries are premised entirely on their patients' medical expenses incurred to treat personal

21   injuries from automobile accidents and, accordingly, are not an injury to business or property

22   under the CPA. *See Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1310-11 (W.D. Wash. 2013);

23   *Kovarik v. State Farm Mut. Auto. Ins. Co.*, No. C15-1058-TSZ, 2016 WL 4555465, at *3 (W.D.

24   Wash. Aug. 31, 2016); *Haley v. Allstate Ins. Co.*, No. C09-1494-RSM, 2010 WL 4052935, at *7-

25

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 20    (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   *8 (W.D. Wash. Oct. 13, 2010). The lack of plausible allegations showing causation and

2   actionable injury is fatal to Defendants' CPA claim.

### 4.      Defendants Fail to State a Claim for Tortious Interference.

3

4   In Washington, the elements of tortious interference with a business expectancy are: (1)

5   the existence of a valid contractual relationship or business expectancy; (2) defendants'

6   knowledge of that relationship or expectancy; (3) an intentional interference causing or inducing

7   breach or termination of the relationship or expectancy; (4) defendants interfered for an improper

8   purpose or used improper means; and (5) resulting damages. *Pacific NW Shooting Park Ass'n v.*

9   *City of Sequim*, 158 Wash. 2d 342, 351 (2006). Here, Defendants' amended allegations fail to

10  establish that the State Farm Plaintiffs intentionally interfered with Defendants' business

11  expectancy causing a breach of termination of the expectancy, that the State Farm Plaintiffs

12  interfered for an improper purpose or used improper means, and that Defendants suffered damage

13  as a result of the interference.

### a.      Intentional Interference.

14

15  Defendants fail to allege facts showing an intentional interference. Interference with

16  a business expectancy is intentional "if the actor desires to bring it about or if he knows that the

17  interference is certain or substantially certain to occur as a result of his action." *Newton Ins.*

18  *Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wash. App. 151, 158 (2002).

19  Although intent may be alleged "generally," a party must still comply with "the less rigid –

20  though still operative – strictures of Rule 8." *See Iqbal*, 556 U.S. at 686-87. Defendants plead

21  both intent and interference in only conclusory terms.  Here, Defendants assert that "[t]hrough the

22  handling of claims, sending of letters and contacts with third-parties, and through its reports to the

23  NICB, as described more fully above, State Farm has deliberately interfered with and/or induced

24  the termination or breach of these contractual and business expectancy relationships enjoyed by

25  Dr. Hanson and Hanson Chiropractic." (Am. Countercl. ¶ 186.)  Defendants do not explain how

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 21    (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

the State Farm Plaintiffs' "handling of claims" constituted an intentional interference with any business expectancy of Defendants. Defendants do not explain how the State Farm Plaintiffs' letters to insureds, claimants, and their counsel – which were required under Washington law – constitute an intentional interference. Likewise, Defendants do not explain how the State Farm Plaintiffs' reporting of Defendants to the NICB – which was required by statute and subject to qualified immunity – could possibly be an intentional interference with Defendants' business expectancy with other persons outside the NICB.[10]

**b.      Improper Purpose or Improper Means.**

Defendants allege the State Farm Plaintiffs "interfered with the relationships for the purpose of manufacturing reduced medical expenses in automobile injury claims in the Pacific Northwest." (Am. Countercl. ¶ 187.)  However, exercising one's legal interest in good faith is not improper interference. *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.,* 169 Wash. App. 111, 132–33 (2012); *Quadra Enters., Inc. v. R.A. Hanson Co., Inc.,* 35 Wash. App. 523, 527 (1983). The State Farm Plaintiffs have certain legal duties to investigate insurance fraud, to quantify the amount of fraud identified, to report insurance fraud, and to communicate with their insureds and others. Without additional facts, Defendants do not plausibly plead that any communications by the State Farm Plaintiffs were for an improper purpose rather than for the purpose of satisfying their legal duties.

**c.      Causation and Damages.**

Finally, Defendants do not adequately allege that the State Farm Plaintiffs' interference caused the breach or termination of a business expectancy that resulted in damages to Defendants. Defendants claim that they "have suffered substantial damages as the direct result of State Farm's

---

[10] Defendants allege they have a business expectancy with other unspecified "insurance companies." (Am Countercl. ¶ 185.) This is implausible. A valid business expectancy is a "prospective contractual or business relationship that would be of pecuniary value." *Life Designs,* 191 Wash. App. at 337. The fact that an insurance company may pay Defendants directly instead of reimbursing the insured does not transform that payment transaction into a contractual or business relationship.

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1   scheme to interfere in its business relationships, including reduced numbers of patients and

2   referrals and through having other insurance companies investigate its practices based on State

3   Farm's allegations and statements." (Am. Countercl. ¶ 188-89.) Defendants offer no facts

4   supporting the generic allegation of "reduced numbers of patients and referrals" nor do they

5   explain why they believe any purported reductions in numbers of patients and referrals are

6   attributable to the State Farm Plaintiffs' alleged conduct as opposed to some other unrelated

7   cause, such as a market fluctuation. Defendants do not identify a single patient who no longer

8   treats with them or a single attorney who no longer refers patients to them as a result of any

9   alleged communications from the State Farm Plaintiffs. Finally, Defendants allege no facts

10  suggesting that other unidentified insurance companies' investigations of Defendants are

11  attributable to the State Farm Plaintiffs' purported interference. Moreover, an allegation that other

12  insurance companies are investigating Defendants does not indicate there is a lost business

13  opportunity between Defendants and those insurance companies.

14  **B.      Defendants Unreasonably Delayed in Seeking Leave to Amend Their Counterclaims.**

15          On September 15, 2016, Defendants filed their answer and counterclaim in which they

16  asserted claims for defamation, violation of the CPA, tortious interference with business

17  expectancy, intentional and negligent infliction of emotional distress, and declaratory relief. (*See*

18  Dkt. 17.) The State Farm Plaintiffs moved to dismiss on October 11, 2016. (*See* Dkt. 18.) The

19  Court dismissed Defendants' counterclaims in their entirety on February 3, 2017 and provided

20  that Defendants could seek leave to file amended counterclaims if they could do so consistent

21  with their Federal Rule of Civil Procedure 11 obligations. (Dkt. No. 36 at 9.) Defendants waited

22  nearly three months after the Court entered the dismissal order to file their motion for leave. (*See*

23  Dkt. No. 48.) Meanwhile discovery in this case progressed, depositions were scheduled, and

24  Court-ordered deadlines moved ever closer. Expert reports are due on July 12, 2017 and

25

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 23    (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  discovery must be completed by September 10, 2017. (Dkt. No. 14.) This matter is set for trial on

2  January 8, 2018. (*Id.*)

3         The Ninth Circuit explained that:

4      In assessing timeliness, we do not merely ask whether a motion was filed within
       the period of time allotted by the district court in a Rule 16 scheduling order.
5      Rather, in evaluating undue delay, we also inquire whether the moving party
       knew or should have known the facts and theories raised by the amendment in the
6      original pleading.

7  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006).

8         Defendants do not explain their delay in seeking leave, assert no new or different claims

9  for relief, and, indeed, there is no reason they could not have made substantially the same

10  allegations much earlier. As an initial matter, the first 70 paragraphs of the proposed amended

11  counterclaims are almost identical in substance to those contained in other complaints or

12  counterclaims filed by defense counsel against the State Farm Plaintiffs. (*See* Fogg Decl. Exs. A

13  and B.)  There is nothing specific to Defendants in these allegations. Paragraphs 71 through 77

14  are allegations concerning Defendants' background, which was obviously known to Defendants.

15  The remaining allegations reflect some factual information about the State Farm Plaintiffs'

16  investigation of Defendants and a great deal of unsupported conclusions concerning the State

17  Farm Plaintiffs' purported motives for investigating Defendants and "manufacturing" of a

18  predetermined treatment claim; however, as Defendants' acknowledge in their Motion, the thrust

19  of Defendants' theory remains the same as in their original Counterclaim – that the State Farm

20  Plaintiffs engaged in some sort of "systematic program to harass and intimidate Dr. Hanson".

21  (Dkt. No. 17 at ¶¶ 2-7.)  If Defendants had a non-frivolous basis for making the allegations in

22  their original Counterclaim, they should have been able to readily amend their counterclaims to

23  provide additional factual details. Instead, they waited. Under these circumstances, Defendants'

24  motion for leave should be denied.

25

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 24    (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1

## <u>CONCLUSION</u>

2      Defendants' motion should be denied because their proposed amendments do not state a

3   claim upon which relief may be granted and, therefore, permitting amendment would be futile.

4   Alternatively, Defendants' motion for leave to file amended counterclaims should be denied

5   because Defendants unreasonably delayed in seeking leave and granting the motion will delay this

6   litigation.

7      DATED this 8th day of May, 2017.

8                                    *s/ Steven W. Fogg*
                                     Steven W. Fogg, WSBA No. 23528
9                                    Todd T. Williams, WSBA No. 45032
                                     CORR CRONIN MICHELSON
10                                   BAUMGARDNER FOGG & MOORE LLP
                                     1001 Fourth Avenue, Suite 3900
11                                   Seattle, Washington 98154
                                     sfogg@corrcronin.com
12                                   twilliams@corrcronin.com

13                                   David I. Spector (*Admitted Pro Hac Vice*)
                                     Kayla L. Pragid (*Admitted Pro Hac Vice*)
14                                   S. Montaye Sigmon (*Admitted Pro Hac Vice*)
                                     AKERMAN LLP
15                                   777 S. Flagler Drive, West Tower, Suite 1100
                                     West Palm Beach, Florida 33401
16                                   David.Spector@Akerman.com
                                     Kayla.Pragid@Akerman.com
17                                   Montaye.Sigmon@akerman.com

18                                   *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 25   (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **May 8, 2017**, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to the following:

***Attorneys for Defendants Peter J. Hanson,***
***P.C. d/b/a Hanson Chiropractic and Peter J.***
***Hanson:***

Gregory P. Turner, WSBA No. 20085
LEE SMART, P.S., INC.
701 Pike St., Suite 1800
Seattle, WA  98101
gpt@leesmart.com

Peter Steilberg, WSBA No. 22190
Tamara K. Nelson, WSBA No. 27679
MERRICK, HOFSTEDT & LINDSEY, P.S.
3101 Western Ave., Suite 200
Seattle, WA  98121
psteilberg@mhlseattle.com
tnelson@mhlseattle.com

Andrew P. Baratta (*admitted pro hac vice*)
BARATTA, RUSSELL & BARATTA
3500 Reading Way
Huntingdon Valley, PA  19006
andrew@barattarussell.com

    *s/ Steven W. Fogg*
Steven W. Fogg, WSBA No. 23528
CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154
(206) 625-8600 Phone
(206) 625-0900 Fax
sfogg@corrcronin.com

STATE FARM MUTUAL'S AND STATE FARM FIRE'S
RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM - 26    (No. 2:16-cv-01085-RSL)

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900